FILED

2022 Sep-29 PM 01:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| KIM SUSAN BURKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00679-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## <u>AFFIRMING THE DECISION OF THE COMMISSIONER</u>

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kim Susan Burks appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability benefits, based on her degenerative disc disease, migraine headaches, and seizure disorder. Doc. 1. Plaintiff Burks applied for disability benefits with an alleged onset date of September 12, 2015. Doc. 9-6 at 2–5. The Commissioner denied Burks' claim for benefits. Doc. 9-3 at 2–4, 26.

Pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties consented to magistrate judge jurisdiction. Doc. 12. After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

1

**ISSUES FOR REVIEW**

In this appeal, Plaintiff Burks argues that the court should reverse the Commissioner's decision for four reasons: (1) the finding of the Administrative Law Judge (ALJ) that Burks could perform her past relevant work was not supported by substantial evidence and was not made according to proper legal standards (e.g., Social Security Ruling (SSR) 82-62); (2) the ALJ's finding that Burks could perform light work was not supported by substantial evidence and was not made according to SSR 96-8p; (3) the Appeals Council erred in failing to review new, material, and chronologically relevant evidence; and (4) the ALJ's decision was not supported by substantial evidence, and the ALJ improperly relied on testimony from a vocational expert.[1]  Doc. 13 at 1–2.

**STATUTORY AND REGULATORY FRAMEWORK**

A claimant applying for Social Security benefits bears the burden of proving disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

---

[1] For ease of review, the court presents these issues in a sequence that is different from Burks' briefing.  Doc. 13; Doc. 15.

§ 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment or combination of impairments;

(3)   if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)   if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and

(5)   if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see Winschel v.*

*Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211. At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial

evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

## BACKGROUND

### A.    Procedural background

On August 6, 2019, Plaintiff Burks applied for disability insurance benefits under Title II of the Social Security Act.  Doc. 9-6 at 2–3.  In her application, Burks alleged that she became disabled on September 12, 2015.  Doc. 9-6 at 2.  On October 3, 2019, the SSA initially denied Burks' disability claim.  Doc. 9-4 at 2; Doc. 9-5 at 2–7.

On October 16, 2019, Burks requested that the SSA reconsider her application for disability insurance benefits.  Doc. 9-5 at 8.  On December 26, 2019, the SSA denied Burks' request for reconsideration.  Doc. 9-4 at 17; Doc. 9-5 at 9–11.

The SSA granted Burks' request for a hearing (Doc. 9-5 at 12, 15–16); and, on August 20, 2020, a telephonic hearing was held before an ALJ (Doc. 9-3 at 43–68; Doc. 9-5 at 30–39).   A vocational expert or "VE"—Lane Westcott—also appeared and testified at the hearing.  Doc. 9-3 at 43, 64–68.

On September 2, 2020, the ALJ issued an unfavorable decision, finding that Burks was not disabled under the Social Security Act.  Doc. 9-3 at 26–38.

Through counsel, Burks sought review from the SSA Appeals Council, arguing that the ALJ's decision was not based on substantial evidence and was not based on the proper legal standards.  Doc. 9-5 at 58–60; Doc. 9-7 at 102–10.

On June 15, 2020, the Appeals Council denied Burks' request for review,

finding that there was "no reason under [its] rules to review the [ALJ's] decision." Doc. 9-3 at 2. The Appeals Council also declined to exhibit the additional medical records that Burks submitted. Doc. 9-3 at 3. The Appeals Council found that the records from Dekalb Neurology and Sleep Center, dated March 4, 2020 through November 2, 2020, and the treatment notes from Etowah Family Medical Clinic, dated November 25, 2020, did "not show a reasonable probability that [the evidence] would change the outcome of the decision." Doc. 9-3 at 3. The Appeals Council also found that a physical capacities form document from Dr. Courtney Lowe at Etowah Family Medical Clinic, dated January 27, 2021, did "not relate to the period at issue." Doc. 9-3 at 3.

After the Appeals Council denied Burks' request for review (Doc. 9-3 at 2–5), the ALJ's decision became final for purposes of judicial review. *See* 42 U.S.C. § 405(g).

### B.   Factual background

Burks was born on August 1, 1957, and was 63 years old at the time of the ALJ hearing. Doc. 9-3 at 49; Doc. 9-7 at 15. Burks lives in Steele, Alabama, with her husband. Doc. 9-3 at 49; Doc. 9-7 at 2.

In her initial application for benefits, Burks alleged that she last worked on March 16, 2015 (Doc. 9-7 at 3), and that she became disabled on September 12, 2015 (Doc. 9-3 at 2; Doc. 9-7 at 15). Burks stated that she was unable to work because of

migraines, nerve damage and pain, vision problems, depression, anxiety, and a stroke that occurred in 2017.  Doc. 9-7 at 3.

On September 9, 2019, Burks submitted an adult function report.  Doc. 9-7 at 26–33.  Burks reported that on a daily basis she is able to make her bed, feed and walk her dog, change the sheets, and clean the house, although she cannot clean the entire house in one day.  Doc. 9-7 at 26–27.  She reported that she will "cook supper about four times a week," and that she is able to "swim a few days [a week]."  Doc. 9-7 at 26.  She noted that she sometimes needs to nap in the morning, "due to headache and/or medication," and that her headaches and nerve damage affect her sleep.  Doc. 9-7 at 26–27.

Burks reported that she does not have any issues with personal care, and that she is able to prepare a complete meal either daily or every few days.  Doc. 9-7 at 27–28.  She reported that she is not able to complete yard work because she gets tired too quickly and because the heat causes headaches.  Doc. 9-7 at 29.  Burks reported that she can drive and ride in a car, and that she is able to handle money without issues.  Doc. 9-7 at 29.  She reported that she watches television on a daily basis, and that she completes light exercise at a pool when the weather permits.  Doc. 9-7 at 30.  Burks reported that she cannot complete heavy lifting and cannot run, and that her "headaches, backaches, [and] medication keep [her] from even [going] to church regularly."  Doc. 9-7 at 30.

Burks reported that her medical conditions affect the following: lifting, squatting, kneeling, stair climbing, and seeing. Doc. 9-7 at 32. She also reported that she "need[s] help getting up" from a squat or kneel, and that she has "to be very cautious on stairs or stepping off curbs." Doc. 9-7 at 32.

Burks also noted that she cannot work "hard like [she] use[d] to," and that she cannot complete chores that require a higher degree of physical exertion. Doc. 9-7 at 33. She reported that her "nerve damage is aggravating," and that her feet hurt especially badly at night. Doc. 9-7 at 33. She reported that sometimes the words she wants to say "just won't come to mind," but that her anxiety is "usually tolerable" with medication. Doc. 9-7 at 33.

On September 4, 2019, Plaintiff Burks' husband—Curtis Burks—submitted a third-party adult function report regarding Plaintiff Burks' limitations. Doc. 9-7 at 18–25. Mr. Burks has known Plaintiff Burks for 44 years and reported that they "do everything together." Doc. 9-7 at 18. Mr. Burks reported that Plaintiff Burks' daily activities are lying on the couch with the dog, and that she "does as little as possible." Doc. 9-7 at 18.

Mr. Burks reported that Plaintiff Burks could complete yard work and house work in the past, but that she no longer can do so because of her medical conditions. Doc. 9-7 at 19. He reported that she has to take sleeping pills and sleep with "either an ice pack or heating pad or both." Doc. 9-7 at 19. However, Mr. Burks also

reported that Plaintiff Burks does not have any problems with personal care, that she can prepare small meals like cereal and sandwiches, as well as occasionally prepare a complete meal, and that she can "do some light cleaning and laundry."  Doc. 9-7 at 19–20.

Mr. Burks reported that Plaintiff Burks goes outside "rarely," because of the heat, cold, and loss of balance.  Doc. 9-7 at 21.  However, he also reported that she can drive a car and go outside alone, and that she is able to handle money independently, although she "needs reminders to pay bills."  Doc. 9-7 at 21.

Mr. Burks reported that Plaintiff Burks' condition has affected the following activities:  lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, seeing, remembering, completing tasks, concentrating, using her hands, and getting along with others.  Doc. 9-7 at 23.  Mr. Burks reported that Plaintiff Burks is able to follow written and spoken instructions, but that she does not handle stress well, does not like change, and does not like to be around other people as she previously did.  Doc. 9-7 at 23–24.

On March 15, 2020, Plaintiff Burks completed a work background form.  Doc. 9-7 at 77–78.  On that form, Burks indicated that she last worked from 2009 to 2013 at a courthouse in Gadsden, Alabama, where she input file information.  Doc. 9-7 at 77.  Before that, Burks worked as a lunchroom worker from 2007 to 2009, and at a law firm assisting with real estate closings from 2001 to 2007.  Doc. 9-7 at 77.

## C.    The ALJ hearing

At the July 2020 ALJ hearing, Burks testified that she graduated from high school, and that she can read, write, and perform basic math.  Doc. 9-3 at 50.  She also testified that she is able to drive.  Doc. 9-3 at 50.

Burks testified that she last worked at a courthouse in Gadsden, where she was a "business personal property clerk," but that she left the job because she was missing a lot of work due to her migraines.  Doc. 9-3 at 50–51.

Burks testified that, as a courthouse clerk, she "collected all the itemized possessions of a business and the cost that determined the business taxes," and "input that data into a computer all day long."  Doc. 9-3 at 60.  She testified that she also filed forms, answered phones, and spoke with people who came to the courthouse.  Doc. 9-3 at 60.  Burks also testified that she had to pull files, box files, lift boxes, squat, and climb on stools and ladders.  Doc. 9-3 at 61–62.  Burks testified that, in the last year of that job, she was close to reaching the quota of allowed absences each month, but ultimately "quit on [her] own."  Doc. 9-3 at 61.

Burks also testified that, in the past, she worked for a law firm as a secretary and receptionist, and assisted with real estate closings.  Doc. 9-3 at 51.

Burks testified that she no longer can work because of her migraines, and that she "never know[s] when they're [going to] hit."  Doc. 9-3 at 52.  She testified that, when she has a migraine, "about all [she] can do is take something and [lie] back

11

down," and that the medication makes her drowsy.  Doc. 9-3 at 52.  Burks testified that she "still [has] headaches, not real severe, every day, possibly, once or twice a week."  Doc. 9-3 at 52.

Burks also testified that she has lower back problems and nerve damage that started after her stroke, and that it "causes some pain in [her] knees and legs and feet."  Doc. 9-3 at 52–53.  She testified that she was "not sure" how long she could stand or walk without a break, but that if she is "on [her] feet very long" then her ankles and feet swell and her back begins to hurt.  Doc. 9-3 at 54–55.  She also testified that, if she has a "good support chair," she can "sit awhile" without hurting her lower back.  Doc. 9-3 at 55.  Burks testified that she could lift "no more than ten" pounds with some frequency, and that while she cannot squat to pick something up, she could bend over to pick something up if needed.  Doc. 9-3 at 55.

Burks testified that she has double vision, which contributes to her headaches when she uses a computer.  Doc. 9-3 at 53.  She testified that, while she has high blood pressure, it is controlled by medication.  Doc. 9-3 at 53.  Burks also testified that she has carpal tunnel syndrome in both her wrists, but that she is not currently receiving medical treatment.  Doc. 9-3 at 56.  Burks testified that, while she received a recommendation to use a CPAP machine for sleep apnea, she has not "been to that department to get fitted for one."  Doc. 9-3 at 56–57.  She also testified that her medications are effective, including Lexapro for her anxiety and depression, but that

the medications can make her a little dizzy, tired, or drowsy.  Doc. 9-3 at 58–59.

Burks also testified that she had several strokes in 2017, which created long-term effects, including "double vision, the blurred vision, the nerve pain in [her] hands, knees, legs, and feet," and instances when she has twinges in her left side or the left side of her face goes numb.  Doc. 9-3 at 62.  Burks testified that she has to deal with double vision "four, five times a week."  Doc. 9-3 at 62.

Burks testified that she takes care of her small dog, is able to bathe, shower, and dress independently, and does minimal cleaning around the house.  Doc. 9-3 at 57–58.  But she also noted that her health issues "have prevented [her] from enjoying [her] work and being able to get up and go."  Doc. 9-3 at 63.

As noted above, Lane Wescott (the vocational expert or "VE") also testified at the ALJ hearing.  Doc. 9-3 at 63–68.  VE Wescott described Burks' past work as a property clerk as a light, skilled job, and her past work as a mortgage closing clerk as a sedentary, skilled job.  Doc. 9-3 at 65.  Wescott testified that a hypothetical individual with multiple limitations, including sitting no more than six hours per day and standing no more than six hours per day, limited to only occasionally stooping, crouching, kneeling, or crawling, limited to no use of moving machinery, and no exposure to unprotected heights, would still be able to perform both of Burks' past relevant jobs.  Doc. 9-3 at 65–66.

Westcott testified that, if that hypothetical individual were given additional

limitations, including "limited to lifting up to ten pounds occasionally, standing or walking for approximately two hours per eight-hour work day, and sitting for approximately six hours per eight-hour work day, with normal breaks," the individual would not be able to perform the property clerk job, but would be able to perform the mortgage closing clerk job. Doc. 9-3 at 66. However, Westcott testified that the hypothetical individual would not be able to perform Burks' past work if the additional limitations of being "off task 20 percent or more of the workday" and "absent from work three days or more per month" were included. Doc. 9-3 at 66–67. Westcott also testified that, if the hypothetical individual had those additional limitations and the same age, education, work experience, and skillset as Burks, the individual would not be able to find employment in the national economy. Doc. 9-3 at 67.

### D.     The ALJ's decision

On September 2, 2020, the ALJ issued an unfavorable decision on Burks' claims, finding that she was not disabled from September 12, 2015, through the date of the decision. Doc. 9-3 at 26–38. The ALJ found that Burks was insured through December 31, 2020, and was required to establish disability on or before that date in order to be entitled to disability insurance benefits. Doc. 9-3 at 30, 32.

At step one of the sequential analysis, the ALJ found that Burks had not engaged in substantial gainful activity since September 12, 2015, her alleged onset

14

date.  Doc. 9-3 at 32.

At step two, the ALJ found that Burks had severe impairments of degenerative disc disease of the lumbar spine and migraine headaches.  Doc. 9-3 at 32.  The ALJ also found that Burks had non-severe impairments of "obesity, residuals of cerebrovascular disease (stroke), impaired vision, hypertension, hyperlipidemia, mitral valve prolapse, carpal tunnel syndrome, neuropathy, and obstructive sleep apnea."  Doc. 9-3 at 32.  The ALJ found that there was "no evidence that [the non-severe] impairments cause more than minimal limitations to [Burks'] ability to perform work-related activities."  Doc. 9-3 at 33.  The ALJ also found that Burks had "no medically determinable impairment of a seizure disorder," and that her "medically determinable impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [Burks'] ability to perform basic mental work activities and are therefore non-severe."  Doc. 9-3 at 33.

At step three, the ALJ found that Burks did not have an impairment or combination of impairments that met the severity of the impairments in the SSA's "Listing of Impairments," including lumbar degenerative disc disease ("Listing 1.04A").  Doc. 9-3 at 34.  The ALJ also reviewed SSR 19-4P and "Listing 11.02" for epilepsy, as "the listing most closely analogous to primary headache disorders."  Doc. 9-3 at 34.

15

The ALJ then found that Burks had the "residual functional capacity" (RFC) to perform light work, "except that she can never climb ladders, ropes, scaffolds. She can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl. [She] can have frequent exposure to extreme cold, humidity, and excessive vibration; but she should avoid all exposure to moving machinery and unprotected heights."  Doc. 9-3 at 34–35.

At step four, based on the testimony of the VE (Doc. 9-3 at 65), the ALJ found that Burks had past relevant work as a property clerk and as a mortgage closing clerk (Doc. 9-3 at 37).  The ALJ concluded that Burks was "capable of performing [her] past relevant work as a property clerk and mortgage closing clerk."  Doc. 9-3 at 37.

Consequently, the ALJ determined that Burks was not disabled under the Social Security Act.  Doc. 9-3 at 38.  Because the Appeals Council found no reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

### E.    The Appeals Council's decision

After the ALJ issued the decision, Burks submitted additional evidence for review to the SSA Appeals Council.  Burks also argued to the Appeals Council that the ALJ's decision was not based on substantial evidence and was not based on the proper legal standards.  Doc. 9-7 at 102–10.

Burks submitted three sets of additional medical records to the Appeals Council: (1) a "Physical Capacities Form" document from her primary care physician, Dr. Courtney Lowe at Etowah Family Medical Clinic, dated January 27, 2021; (2) medical records from Etowah Family Medical Clinic, dated November 25, 2020; and (3) medical records from DeKalb Neurology and Sleep Center, dated March 4, 2020 through November 2, 2020. Doc. 9-3 at 9–25.

On June 15, 2020, the Appeals Council denied Burks' request for review, finding that there was "no reason under [its] rules to review the [ALJ's] decision." Doc. 9-3 at 2. The Appeals Council also declined to exhibit the additional medical records that Burks submitted. Doc. 9-3 at 3.

The Appeals Council determined that the records from Dekalb Neurology and Sleep Center, dated March 4, 2020 through November 2, 2020, and the treatment notes from Etowah Family Medical Clinic, dated November 25, 2020, did "not show a reasonable probability that [the evidence] would change the outcome of the decision." Doc. 9-3 at 3. The Appeals Council also determined that the physical capacities form document from Dr. Lowe, dated January 27, 2021, did "not relate to the period at issue." Doc. 9-3 at 3.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal

standards, and that the Appeals Council did not err in denying review.

I.   **The ALJ's finding that Plaintiff Burks can perform her past relevant work was supported by substantial evidence and was made according to proper legal standards (e.g., SSR 82-62).**

The ALJ properly found that Burks can perform her past relevant work.  In her briefing, Burks argues that the ALJ's finding that she can perform her past relevant work was "not supported by substantial evidence and [was] not in accordance with proper legal standards."  Doc. 13 at 32; Doc. 15 at 7.  Burks argues that the ALJ "failed to consider all of the duties of the past work and evaluate [Burks'] ability to perform those duties in spite of the impairments."  Doc. 13 at 32; Doc. 15 at 8.

Under SSR 82-62, a claimant's past relevant work is work activity (1) that qualifies as "substantial gainful activity," (2) that was performed long enough for the claimant to achieve average performance, and (3) that was performed within the recent, relevant period.  SSR 82-62, 1982 SSR LEXIS 27.  In finding that a claimant can perform a past relevant job, an ALJ must make the following specific findings of fact:  (1) "[a] finding of fact as to the individual's RFC" or residual functional capacity; (2) "[a] finding of fact as to the physical and mental demands of the past job/occupation"; and (3) "[a] finding of fact that the individual's RFC would permit a return to his or her past job or occupation."  SSR 82-62, 1982 SSR LEXIS 27, *10.  However, a claimant bears the burden of proving that she cannot perform her past

relevant work either as she performed the job or as the job is generally performed in the national economy. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991).

The ALJ "may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work. The ALJ also may consider the job descriptions set forth in the [Dictionary of Occupational Titles]." *Simpson v. Commissioner of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)).

There is no dispute regarding the ALJ's finding (based on the VE's testimony) that Burks' past relevant work consisted of work as a property clerk and as a mortgage closing clerk. *See* Doc. 9-3 at 37, 65. And (as explained above), the ALJ found that Burks had the RFC to perform light work, "except that she can never climb ladders, ropes, scaffolds. She can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl. [She] can have frequent exposure to extreme cold, humidity, and excessive vibration; but she should avoid all exposure to moving machinery and unprotected heights." Doc. 9-3 at 34–35.

Based on the record evidence, the ALJ found that the "evidence of occasional migraine headaches" supported the RFC limitation related to "climbing of ladders and exposures to unprotected heights." Doc. 9-3 at 37. The ALJ found further that limitations of "occasional postural maneuvers, limited exposures to temperature extremes, humidity, and vibrations, and avoidance of moving machinery is

supported by evidence of lumbar degenerative disc disease causing pain."  Doc. 9-3 at 37.

Nevertheless, the ALJ found that Burks "remains capable of performing light work," because the record evidence demonstrated that "injections and medications have allowed good motor strength, range of motion and sensation."  Doc. 9-3 at 37.

Thus, as a preliminary matter (and consistent with SSR 82-62), the ALJ properly made a finding with respect to Burks' RFC, and substantial evidence supported that finding.

The ALJ also "consider[ed] all of the duties of [Burks'] past work," and made "[a] finding of fact as to the physical and mental demands of [her] past job/occupation."  *See* Doc. 13 at 32; Doc. 15 at 8; SSR 82-62, 1982 SSR LEXIS 27, *10.

As explained above, the VE testified that Burks' past work as a property clerk was a skilled job requiring light exertional levels, and that her past work as a mortgage closing clerk was a skilled job requiring sedentary exertional levels.  Doc. 9-3 at 55.  The ALJ then made a finding of fact regarding the demands of Burks' past work, and included the following chart in the decision:

The claimant has past relevant work as a:

| Occupation Title | DOT No. | Exertion (General) | Exertion (Actual) | Skill Level | SVP |
|---|---|---|---|---|---|
| Property clerk | 222.367-054 | Light | Light | Skilled | 5 |
| Mortgage closing clerk | 219.362-038 | Sedentary | Sedentary | Skilled | 5 |

Doc. 9-3 at 37.

The chart in the ALJ's decision accounted for the physical and mental demands of Burks' past work both in a general sense and as actually performed, as well as the skill level and the required specific vocational preparation (SVP). Doc. 9-3 at 37.

Consequently, the ALJ properly made a finding of fact regarding the physical and mental demands of Burks' past work, and substantial evidence supported the ALJ's finding. The ALJ correctly relied on the VE's testimony, the Dictionary of Occupational Titles, and Burks' testimony in arriving at that finding. Doc. 9-3 at 37; *see Simpson*, 423 F. at 884.

Finally, the ALJ properly "evaluate[d] [Burks'] ability to perform those duties in spite of [her] impairments," and found that Burks' "RFC would permit a return to [her] past job or occupation." *See* Doc. 13 at 32; Doc. 15 at 8; SSR 82-62, 1982 SSR LEXIS 27, *10.

The ALJ posed hypothetical questions to the vocational expert about whether an individual with the same age, educational level, past relevant work, and RFC as Burks could perform her past relevant work even with multiple limitations, including sitting no more than six hours per day and standing no more than six hours per day, only occasionally stooping, crouching, kneeling, or crawling, limited to no use of moving machinery, and no exposure to unprotected heights. Doc. 9-3 at 65. The

VE testified that "[b]oth jobs that make up the past work could be performed as generally performed and as performed by [Burks]." Doc. 9-3 at 66.

The ALJ found that, "[i]n comparing [Burks'] residual functional capacity with the physical and mental demands of [her past] work," Burks is "able to perform [her past work] as actually and generally performed." Doc. 9-3 at 37. The ALJ also found that Burks "could perform [her] past work as a mortgage closing clerk as actually and generally performed, *even if she were limited to sedentary work.*" Doc. 9-3 at 37 (emphasis in original).

In sum, the ALJ followed the applicable legal standards (including SSR 82-62), and there is sufficient evidence in the record based on which a reasonable person would accept the ALJ's finding that Burks could perform her past work. *See Crawford*, 363 F.3d at 1158 (where there is substantial evidence, a court must affirm the ALJ's decision, "[e]ven if the evidence preponderates against the Commissioner's findings" (quoting *Martin*, 894 F.2d at 1529)). Accordingly, the ALJ properly found that Burks could perform her past relevant work.

## II. The ALJ's finding that Burks has the RFC to perform light work was supported by substantial evidence and was made according to SSR 96-8p.

The ALJ properly found that Burks has the RFC to perform light work. In her briefing, Burks argues that "the finding that [Burks] has the capacity to perform light work is not supported by substantial evidence and violates SSR-96-8[p]." Doc. 13

at 43.  Burks argues that "[t]here is no evidence that [she] can perform light work," and that the ALJ's findings are "conclusions without analysis." Doc. 13 at 43.  Burks also argues that the ALJ failed to properly examine her ability to perform sustained work activities in an ordinary workday.  Doc. 13 at 41.  Burks argues further that, were she limited to sedentary work, she would be entitled to benefits under the applicable Social Security grids.  Doc. 13 at 43.

The ALJ's finding that Burks has the RFC to perform light work was made according to SSR 96-8p and was supported by substantial evidence.  As a preliminary matter, the applicable regulations refute Burks' argument that the ALJ erred in determining Burks' RFC because the RFC "must be supported by the residual functional capacity assessment of a treating or examining physician." Doc. 13 at 43.  The applicable regulations and caselaw make clear that a claimant's RFC is an issue "reserved to the Commissioner," and not any physician.  20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Bell v. Bowen*, 796 F.2d 1350, 1353–54 (11th Cir. 1986) (recognizing that, although a claimant's physician may state his opinion that the claimant is "disabled" or "unable to work," "the agency will nevertheless determine disability based upon the medical findings and other evidence").

Citing SSR 96-8p, the ALJ's decision stated that in making the RFC finding the ALJ "must consider all of the claimant's impairments, including impairments that are not severe."  Doc. 9-3 at 31 (citing 20 C.F.R. §§ 404.1520(e), 404.1545; SSR

96-8p).  The ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4).  A claimant's RFC is the most a claimant can do despite limitations, not the least.  20 C.F.R § 404.1545(a)(1); *see* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

An ALJ must examine all relevant medical evidence and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations" of limitations by the claimant, her family, her neighbors, her friends, or others, including limitations resulting from pain.  20 C.F.R. § 404.1545(a)(3).  The RFC finding must include a narrative discussion describing how the evidence supports the ALJ's determination, citing specific medical facts and non-medical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

Here, after finding that Burks had both severe and non-severe impairments (Doc. 9-3 at 32–33), the ALJ found that Burks had the RFC to perform light work, except that she can never climb ladders, ropes, scaffolds, can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl, and can have frequent exposure to extreme cold, humidity, and excessive vibration, but should avoid all exposure to moving machinery and unprotected heights.  Doc. 9-3 at 34–35.

Consistent with SSR 96-8p, in making that RFC finding, the ALJ considered

all of Burks' symptoms to the extent that they reasonably could be accepted as consistent with the evidence.  Doc. 9-3 at 35.  The ALJ's decision included a narrative discussion that cited specific medical facts, and that included a review of Burks' treatment notes, results of diagnostic exams, and the opinions of several physicians.  Doc. 9-3 at 35–37. The ALJ also discussed nonmedical evidence, including Burks' testimony at the hearing and her reported activity in the adult function report. Doc. 9-3 at 35.  The ALJ explained further how the medical records corresponded to the functional limitations that the ALJ found in the RFC determination.  Doc. 9-3 at 37.  For example, the ALJ explained that evidence of lumbar degenerative disc disease causing pain supported limiting Burks to a range of light work, rather than a range of medium work (as Dr. Gloria Sellman had opined).  Doc. 9-3 at 37.

In short, the ALJ's RFC finding shows that the ALJ considered all of the evidence regarding Burks' condition.  As the Eleventh Circuit has stated in an unpublished opinion, an ALJ is not required "to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Commissioner of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

The ALJ's RFC finding also was supported by substantial evidence.  The

Social Security regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

Here, the ALJ found that Burks could perform light work, with some additional limitations. Doc. 9-3 at 34–35. The ALJ found that Burks has a history of degenerative disc disease and migraine headaches, along with additional non-severe impairments of "obesity, residuals of cerebrovascular disease (stroke), impaired vision, hypertension, hyperlipidemia, mitral valve prolapse, carpal tunnel syndrome, neuropathy, and obstructive sleep apnea." Doc. 9-3 at 32.

But the ALJ found that, notwithstanding these impairments, Burks could perform light work because the record evidence showed that Burks' conditions are controlled with injections and medications. Doc. 9-3 at 36, 37. The ALJ also found that on June 3, 2020, Burks had reported to her neurologist, Dr. Paul Gilreath, "that

her migraines were improved *without medications* and that she only had one migraine in the past 30 days." Doc. 9-3 at 36 (emphasis in original); *see* Doc. 9-10 at 163.

The ALJ recognized that "[a]n individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." Doc. 9-3 at 31. In this regard, the ALJ found that Burks could sustain activity in an ordinary workday, and that she "remains capable of performing light work," because "injections and medications have allowed good motor strength, range of motion and sensation." Doc. 9-3 at 37.

The ALJ also found that Burks could perform light work based on her reported daily activities and her hearing testimony. For example, Burks reported that she can complete four meals per week, perform household chores, drive to and shop in stores, and regularly exercise in a pool. Doc. 9-3 at 35. The ALJ found that, although Burks testified that she "quit her last job because she was missing too much work due to migraines," she "also testified that she had not exceeded her allotted absence time." Doc. 9-3 at 35. The ALJ found further that Burks reported that she cannot stand for long periods, but that "she can sit 'a while' and can lift 10 pounds." Doc. 9-3 at 35.

In addition, in determining Burks' RFC, the ALJ reviewed the opinions of two state agency medical consultants—Gloria Sellman, MD and Maria Wellman, MD.

Doc. 9-3 at 36–37.  The ALJ noted that Dr. Sellman opined that Burks could "perform medium work with frequent postural maneuvers and environmental limitations," and that Dr. Wellman opined that Burks could "perform light work with occasional postural maneuvers and environmental limitations."  Doc. 9-3 at 37; *see* Doc. 9-4 at 12–14, 30–32.

The ALJ found that Dr. Sellman's opinion was not persuasive because it was not supported by the evidence and was "inconsistent with the diagnostic imaging indicating multilevel lumbar degenerative changes with some neuroforaminal narrowing."  Doc. 9-3 at 37.  The ALJ found that Dr. Wellman's opinion was persuasive because it was supported by the evidence and was "consistent with diagnostic imaging and back pain relieved with injections and medications."  Doc. 9-3 at 37.

In sum, there is sufficient evidence in the record based on which a reasonable person would accept the ALJ's RFC finding that Burks can perform light work with limitations.  *See Crawford*, 363 F.3d at 1158 (where there is substantial evidence, a court must affirm the ALJ's decision, "[e]ven if the evidence preponderates against the Commissioner's findings" (quoting *Martin*, 894 F.2d at 1529)).  Accordingly, substantial evidence supported the ALJ's decision.   And, because substantial evidence supported the ALJ's determination that Burks could perform light work with some additional limitations, there is no reason to address Burks' argument that,

if she could only perform sedentary work, the Social Security grids would lead to a finding of disability.  *See* Doc. 13 at 38–39.

## III. The Appeals Council did not err in declining to review the new evidence that Burks submitted.

The SSA Appeals Council did not err in declining to review the additional evidence that Burks submitted.  As noted above, Burks argues that the Appeals Council erred in declining to review a physical capacities form document from Dr. Courtney Lowe, treatment notes from Etowah Family Medical Clinic, and treatment notes from Dekalb Neurology and Sleep Center.  *See* Doc. 13 at 25.  Burks argues that "[she] submitted a physical capacity evaluation by [her] treating physician," and that "the opinion of a treating physician 'must be given substantial or considerable weight unless "good cause" is shown to the contrary.'"  Doc. 13 at 31 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)).

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Social Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  "The Appeals Council will review a case if it 'receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'"  *Pupo v. Commissioner*, 17 F.4th 1054,

29

1063 (11th Cir. 2021) (quoting 20 C.F.R. § 416.1470(a)(5)).

On the question whether evidence relates to the period on or before the date of the decision, an opinion that is written after an ALJ's decision can be chronologically relevant, only if that opinion is based on the claimant's conditions that relate back to the period before the ALJ's decision. *Washington*, 806 F.3d at 1322–23. And an opinion made on a form document that includes check-boxes is not chronologically relevant if (1) the evidence does not show that the doctor evaluated the claimant's past medical records to fill out the form document, or (2) the doctor did not begin to treat the claimant until several years after the date that the doctor opines the claimant's limitations began. *See Hargress v. Social Sec. Admin. Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).

"[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington*, 806 F.3d at 1321. The court reviews de novo whether supplemental evidence is new, material, and chronologically relevant. *Id.*

### A. Physical capacities form document from Dr. Courtney Lowe.

Burks submitted a physical capacities form document from Dr. Courtney Lowe, dated January 27, 2021. Doc. 9-3 at 9. The form document indicates that Burks can frequently lift up to 5 pounds, occasionally lift 6-10 pounds, and never lift items over 11 pounds, and that Burks can frequently perform reaching, handling,

fingering, and feeling with both her right and left hands.  Doc. 9-3 at 9.  The form indicates that Burks can sit upright in a standard chair for less than 15 minutes at one time and stand for less than 15 minutes at one time.  Doc. 9-3 at 9.  Dr. Lowe also indicated that, due to her physical symptoms, Burks would be off task 70% of an 8-hour day and miss 6 days out of a 30-day period.  Doc. 9-3 at 9.  Dr. Lowe noted that migraines, stroke, nerve pain, and weakness would cause Burks' physical symptoms, and that her medications may also cause sleepiness and drowsiness.  Doc. 9-3 at 9.  Dr. Lowe checked a box to indicate that these limitations "dated back to 9/12/15." Doc. 9-3 at 9.

The Appeals Council found that the ALJ had decided the case through December 31, 2020 (Burks' last insured date), so the physical capacities form did not relate to the relevant period and was not chronologically relevant.  Doc. 9-3 at 3.

Without more (and as explained above), Dr. Lowe's having checked a box to indicate that Burks' limitations dated back to the relevant period is insufficient to show that Dr. Lowe's medical opinion is chronologically relevant.  *See Hargress*, 883 F.3d at 1309–10.  That general rule applies even where it is the claimant's treating physician who checked the box, and even where the physician providing the opinion treated the claimant before the ALJ issued the decision.  *See Howze v. Social Sec. Admin.*, 2022 U.S. App. LEXIS 1321, at *8 (11th Cir. Jan. 18, 2022).  Instead, to be chronologically relevant, a check-box opinion made on a form document that

post-dates the ALJ's decision must include evidence that the doctor "evaluated [the claimant's] past medical records when forming" the opinion.  *Hargress*, 883 F.3d at 1310.

In this case, there is no suggestion or record evidence that Dr. Lowe relied on Burks' past medical records to form her opinion that Burks had limitations dating back to September 2015.  Consequently, Burks has not shown that Dr. Lowe's physical capacities form was chronologically relevant.  Because that form document was not chronologically relevant (*see* 20 C.F.R. § 404.970(b)), the Appeals Council did not err in declining to consider the evidence (*see Pupo*, 17 F.4th at 1063).

Moreover, while the Appeals Council did not address the materiality of Dr. Lowe's medical opinion, there is not a "reasonable probability" that Dr. Lowe's opinion would "change the outcome of the decision."  *See Pupo*, 17 F.4th at 1063. Dr. Lowe's opinion that Burks could frequently lift up to 5 pounds, occasionally lift 6-10 pounds, and never lift items over 11 pounds, and that Burks can frequently perform reaching, handling, fingering, and feeling with both her right and left hands (Doc. 9-3 at 9) was consistent with the ALJ's determination that Burks could perform light work.

In addition, Dr. Lowe's opinion that Burks can sit upright in a standard chair for less than 15 minutes at one time and stand for less than 15 minutes at one time (Doc. 9-3 at 9), is inconsistent with Burks own testimony that if she has a "good

support chair" she can "sit awhile" without hurting her lower back.  Doc. 9-3 at 55.

Dr. Lowe noted that migraines, stroke, nerve pain, and weakness would cause Burks' physical symptoms, and that her medications may also cause sleepiness and drowsiness.  But the ALJ already found that Burks had migraine headaches, with the migraines "described as mild to moderate."  Doc. 9-3 at 10.

Consequently, even if the form submitted by Dr. Lowe were chronologically relevant (and it is not), there still is no "reasonable probability" that the evidence would "change the outcome of the decision."  *See Pupo*, 17 F.4th at 1063.

### B.   Treatment notes from Etowah Family Medical Clinic.

Burks also submitted treatment notes from Etowah Family Medical Clinic, dated November 25, 2020.  Doc. 9-3 at 10–13.  Those records were from an office visit that Burks had with Dr. Lowe, with notes indicating that Burks "presented due to abnormal lipid test results, previously elevated lipid levels and concern about cardiovascular risk."  Doc. 9-3 at 10.  The records also stated that Burks continued to have hypertension and migraine headaches, with the migraines "described as mild to moderate."  Doc. 9-3 at 10.

The Appeals Council found that the records from Etowah Family Medical Clinic were not material, because they did "not show a reasonable probability that [the evidence] would change the outcome of the decision."  Doc. 9-3 at 3.  The records primarily addressed Burks' abnormal lipid results and cardiovascular risk.

While the ALJ did recognize that Burks had non-severe impairments of hypertension, hyperlipidemia, and mitral valve prolapse, those conditions were not severe impairments because they did not "cause more than minimal limitations to [Burks'] ability to perform work-related activities." Doc. 9-3 at 33. There is no indication that the medical records from Etowah Family Medical Clinic would support a finding that those impairments instead were severe. As a result, Burks cannot show a reasonable probability that those records would change the disability determination.

In addition, the records from Etowah Family Medical Clinic were not chronologically relevant, although the Appeals Council did not address that issue. *See Washington*, 806 F.3d at 1320. New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *see also Keeton v. Department of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (the Appeals Council shall "'evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the [ALJ] hearing decision'" (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b))). Here, Burks' appointment at Etowah Family Medical Clinic occurred after the date of the ALJ's decision, and no evidence indicates that the records "related to the period on or before" the ALJ's decision. 20 C.F.R. § 404.970(b).

### C.     Treatment notes from Dekalb Neurology and Sleep Center.

Finally, Burks submitted treatment notes from Dekalb Neurology and Sleep Center, dated March 4, 2020 through November 2, 2020.  Doc. 9-3 at 13–25.  Those records indicated that, during a November 2, 2020 visit, Burks had "no changes" in her back pain and was "doing well" with her headaches.  Doc. 9-3 at 16.

The records indicated that, during an August 3, 2020 follow-up visit, Burks' headaches were "[not applicable] today," that her back pain was helped by therapy, and that her average pain of "9/10 [was] down to 5/10 with tramadol for [a] few hours."  Doc. 9-3 at 16.

The records also indicated that, during a June 3, 2020 visit, Burks' headaches were "[not applicable] today," that her back pain was characterized by dull stabbing that was "aggravated by sitting," that there was "[n]o numbness or weakness but some isolated tingling in [her] feet at night," and that her pain was alleviated "by pain patch or heat."  Doc. 9-3 at 17.

Records from a March 4, 2020 visit indicated that Burks had "neck pain associated" with her headaches, that the headaches were "triggered by cheese," but that she had only had one headache in the last 30 days, and that she was not taking medication for her headaches.  Doc. 9-3 at 17.

The records also included an MRI imaging report of Burks' lumbar spine that noted "mild degenerative disc disease."  Doc. 9-3 at 24.

The Appeals Council found that the records from Dekalb Neurology and Sleep Center were not material, because they did "not show a reasonable probability that [the evidence] would change the outcome of the decision." Doc. 9-3 at 3. First, the ALJ already had considered the MRI, and the ALJ had found that the MRI "revealed mild degenerative disc disease throughout with mild neuroforaminal stenosis only at L3/L4." Doc. 9-3 at 36; *see* Doc. 9-10 at 107–08. Because the ALJ already considered this MRI, there is no "reasonable probability that the additional evidence would change the outcome of the decision." *See Pupo*, 17 F.4th at 1063.

Second, with regard to the other records, the notes for each office visit showed that Burks' limitations were mild to moderate and controlled by medication. Those records are consistent with the ALJ's findings that Burks' medical conditions are controlled with injections and medications (despite her impairments), and that she is not disabled. *See* Doc. 9-3 at 36, 37.

## IV. The ALJ's decision was supported by substantial evidence, and the ALJ properly relied on the vocational expert's testimony.

Substantial evidence supported the ALJ's decision, and the ALJ properly relied on the VE's testimony. As explained above (*see supra* Parts I, II, and III), substantial evidence supported the ALJ's findings that Burks can perform her past relevant work and that Burks has the RFC to perform light work, and that the Appeals Council did not err in declining to review the new evidence that Burks submitted. Burks' briefing regarding substantial evidence appears to rehash those

36

issues, and the court does not repeat its analysis here.  *See, e.g.*, Doc. 13 at 43–45.

In her briefing, Burks does argue that the ALJ improperly relied on VE testimony "that was not based on a correct or full statement of [Burks'] limitations and impairments."  Doc. 13 at 44; Doc. 15 at 13–14.  Burks argues that the testimony of the VE "was not substantial evidence of ability to work because the hypothetical question relied upon did not accurately state [Burks'] pain level or her residual functional capacity."  Doc. 13 at 44; Doc. 15 at 13–14.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Winschel*, 631 F.3d at 1180.  But, if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in a hypothetical question to the vocational expert.  *Crawford*, 363 F.3d at 1161.

In this case, the ALJ posed hypothetical questions to the vocational expert—consistent with the ALJ's RFC determination—about an individual who had multiple limitations, including sitting no more than six hours per day and standing no more than six hours per day, limited to only occasionally stooping, crouching, kneeling, or crawling, limited to no use of moving machinery, and no exposure to unprotected heights.  Doc. 9-3 at 65–66.

As noted above, the hypothetical limitations that the ALJ posed to the

vocational expert accurately reflect the ALJ's determination of Burks' RFC (*see* Doc. 9-3 at 34–35).  Consequently, the ALJ was not required to ask the vocational expert about any limitation that the ALJ had not found in the RFC determination— e.g., any other limitation that Burks had alleged, or that Dr. Lowe had included in his opinion (*see supra* Parts II, III.A), but that was not included in the ALJ's RFC determination.  *See Crawford*, 363 F.3d at 1161.

In addition, Burks appears to argue that the ALJ erred in not considering the VE's testimony that a hypothetical individual who would miss "three days of work or more per month" would not be able to find work in the national economy.  *See* Doc. 13 at 7.  But (as explained above), the ALJ's RFC determination did not include a finding that Burks would miss three days of work per month, so that testimony about a hypothetical individual does not apply to Burks.  Consequently, the ALJ properly relied on the VE's testimony to find that Burks could perform her past relevant jobs, and that Burks was not disabled.  *See Crawford*, 363 F.3d at 1161.

In the end, the ALJ found that the VE "testified that an individual with [Burks'] vocational profile and residual functional capacity is capable of performing [Burks'] past work as actually and as generally performed."  Doc. 9-3 at 37.  Based on the VE's testimony and the other record evidence, the ALJ "[found] that [Burks] is able to perform [her] past relevant work as actually and generally performed."

38

Doc. 9-3 at 37.  Substantial evidence supported the ALJ's finding that Burks was not disabled under the Social Security Act.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the court **AFFIRMS** the Commissioner's decision.  The court separately will enter final judgment.

**DONE** and **ORDERED** this September 29, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE